STRONG MANUFACTURING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 11679, 16465. Promulgated May 2, 1928.

*Ben Jenkins, Esq.*, for the petitioner.
*W. F. Gibbs, Esq.*, for the respondent.

OPINION.

LITTLETON: The issues as stated by the petitioner are:

The statutory invested capital of the petitioner, for the calendar years 1919 and 1920, should not be reduced by an amount in excess of $18,359.08, because of insufficient depreciation deducted to December 31, 1916.

The taxable income of the petitioner, for the year 1920, as determined by the respondent, should be reduced by $10,497.65, because a furnace constructed by it in that year, at that cost, could not be operated and was valueless to it.

With respect to the first issue, it should be observed at the outset that we are not here considering a case where the contention is made that the surplus as shown by the petitioner's books should not be disturbed on account of an alleged insufficiency of depreciation accrued in prior years, but, instead, the question is only as to the extent to which the reduction shall be made, the petitioner admitting that some reduction should be made. The respondent has determined that the reduction should be in the amount of $55,077.24, whereas the petitioner contends that the amount should not be in excess of $18,359.08. In addition, we have the fact that an appraisal made after a "survey of petitioner's assets" established the cost of the depreciable assets as at December 31, 1916, of $185,644.85, and, after allowing for depreciation, fixed a depreciated value at December 31, 1916, of $143,857.90, but of course little, if any, weight can be given to this determination of depreciation sustained since we have no evidence with respect to the manner by which it was arrived.

For the purpose of showing that the reduction should not be in excess of $18,359.08, the petitioner introduced two witnesses, both of whom testified that the accumulated depreciation to December 31, 1916, was approximately 10 per cent of the cost of the assets to that date. However, the second witness admitted on cross-examination that he had made no personal examination of the plant, had had little or no experience in passing on matters affecting depreciation, and in expressing an opinion, was doing so largely on the opinion of the other witness who testified on this subject. Another witness, president of the petitioner, testified that on the basis of the detailed examination which he made in 1917, when he began to acquire the stock of the petitioner, accumulated depreciation of 10 per cent to December 31, 1916, would be high. While he testified to experience in the construction and operation of plants similar to the one in question which might qualify him to express an opinion on the matter in controversy, his entire testimony was so general in character that it can not be accepted as establishing that depreciation in excess of 10 per cent had not accrued to December 31, 1916. He evaded questions as to what was a fair rate of depreciation on the machinery and buildings in petitioner's plant, and refused to answer the question as to what rate of depreciation was being taken by petitioner. The impression which would be gained from reading his testimony that petitioner's plant and equipment was being so well maintained that little depreciation was being sustained thereon, is hard to reconcile with an allowance of approximately $21,000 for 1920 (shown by deficiency letter) which did not include depreciation on buildings and which was apparently allowed after protest from the petitioner. While we do not have the capital cost on which this depreciation was computed, it appears from the testimony of this

same witness that small changes were necessary in the plant as it existed in 1916 in order to bring about the increased production which resulted in the years 1919 and 1920 as compared with the years prior to the change in management in 1916 or 1917.

In view of the unsatisfactory evidence as to the first contention advanced by the petitioner, we can not do other than sustain the respondent's determination on this point on the basis of its prima facie correctness. It might be mentioned, however, in passing, that the accumulated depreciation which the respondent has computed for the five years preceding 1917 does not appear excessive as compared with the depreciation which is being allowed for 1920, whereas the petitioner has been allowed more depreciation in 1920 than it contends was sustained for the five years preceding 1917.

The evidence as to the second point is even more unsatisfactory than as to the first. The petitioner is claiming a deduction on account of a furnace which, it is alleged, became "valueless" in 1920. The two witnesses who testified in this connection were uncertain as to when the furnace was installed and it was with difficulty that we were able to satisfy ourselves that the installation did take place in 1920. The evidence does establish that from the time the furnace was first installed, which, apparently, was the latter part of 1920, it did not prove satisfactory, but it certainly is not established that it had been determined in 1920 that the furnace was of no value. The evidence indicates that use was being made of the furnace after 1920 and that as late as 1924 or 1925 it was being availed of for emergency purposes by using oil instead of coal as a fuel. The only information we have as to the cost of the furnace is the allegation in the petition which was denied by the respondent. With no more evidence than is contained in the record on this issue, the Board can not find that a loss was sustained in 1920.

*Judgment will be entered for the respondent.*